UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X
MAUREEN REILLY

            Plaintiff,                    <u>MEMORANDUM AND ORDER</u>

    -against-                             Civil Action No.
                                          CV-04-4830(DGT)
COMPUTER ASSOCIATES LONG-TERM
DISABILITY PLAN, COMPUTER
ASSOCIATES, as Plan
Administrator, UNUM LIFE INS. CO.
OF AMERICA, FIRST UNUM LIFE INS.
CO., GENEX SERVICES, INC., UNUM
PROVIDENT CORP., COMPUTER
ASSOCIATES LIFE INSURANCE PLAN
AND RELIASTAR LIFE INS. CO. OF
NEW YORK

            Defendants.

--------------------------------X

Trager, J:

     Defendants, First Unum Life Insurance Company, UnumProviden

Corporation, and Unum Life Insurance Company of America

(collectively "defendants" or "Unum") bring a motion to

disqualify Maureen Reilly's ("Reilly" or "plaintiff") counsel,

the law firm of Binder & Binder P.C. ("Binder & Binder") and

Peter J. Heck ("Heck").  Defendants bring their motion in

response to Binder & Binder's hiring of Heck.  Immediately before

joining Binder & Binder in August 2004, Heck had been a partner

at Del Mauro, DiGiaimo, Knepper & Heck ("DDKH"), where he had

worked on behalf of Unum in numerous matters.  Heck left Binder &

Binder, after being there five months, in January 2005, but

defendants still maintain that Binder & Binder should be disqualified due to its brief association with him. Defendants' motion is denied.

**Background**

In August 2002, after she was notified by Unum that her short-term disability plan benefits were being terminated, Reilly retained Binder & Binder to appeal the denial. (DeHaan Aff. at 18.) The present motion stems from an action she filed in November 2004 pursuant to that retention. In her complaint Reilly claims, inter alia, that Unum denied her claim for long-term disability because as both the decision-maker and the party responsible for payment Unum was operating under a conflict of interest. (Pl. Compl. at ¶ 151.) She claims that this conflict of interest regularly lead to valid claims being denied by Unum. Id. at ¶ 169. In addition to the restoration of her benefits, Reilly also requests a permanent injunction ordering, first, that Unum be replaced as the insurer and administrator of Computer Associates Long-Term Disability Plan and, second, requiring Unum to alter its claims-handling procedures to eliminate this conflict of interest. Id. at ¶ 170.

DDKH hired Heck in 1998 as an associate and he was made a partner in the firm in 2002. (Def. Ex. E at 3.) Between when Heck joined DDKH in 1998 and when he left the firm in 2004 Heck

billed over 9,600 hours representing Unum in various matters.

Id. at 4.  During this time Heck had significant access to Unum's

documents and personnel.  Id. at 3.  Heck spoke regularly with

Unum's in-house counsel, discussing among other things Unum's

practices, case strategies and settlement negotiation tactics.

Id. at 7.  In 2003 Heck attended Unum's "outside counsel meeting"

in which Unum employees gave presentations concerning strategies

to handle broad-based claims being asserted against Unum.  Id. at

9.  Heck also had access to Unum's "legal extranet system," which

allowed him to freely access large amounts of privileged

information. (Def. Ex. I at 1-3.)

    In June 2004 Heck gave DDKH sixty days' notice that he was

resigning his Partnership.  (Heck Aff. at 8.)  During this period

DDKH screened Heck from all cases in which he was not actively

involved.  Id.  Shortly after leaving DDKH, Heck joined Binder &

Binder's Wane, New Jersey office, beginning work on August 30,

2004.  (DeHaan Aff. at 2.)  Heck worked in Binder & Binder's

Long-term Disability ("LTD") Department, but Heck was the only

member of the LTD Department working in New Jersey.  According to

an affidavit submitted by the firm's senior member, Harry Binder,

the rest of the LTD Department worked out of the firm's

Ronkonkoma, New York office.  (Binder Aff. at 5.)

    When Heck joined Binder & Binder, in addition to working on

other matters, he was assigned to represent three clients in

matters against Unum companies.  Those matters were: <u>Battagliola</u>
<u>v. National Life of Vermont</u>, No. 03 Civ. 8558 (S.D.N.Y. filed
Oct. 30, 2003) (Peck, Mag. J.), <u>Denisi v. CNF Transportation LTD</u>
<u>Plan</u>, No. 04 Civ. 2379 (D.N.J. filed May 19, 2004) (Kugler, J.),
and <u>Lott v. Morgan Stanley Dean Witter & Co. Long-Term Disability</u>
<u>Plan</u>, No. 03 Civ. 9235 (S.D.N.Y. filed Nov. 20, 2003) (Bear, J.).
Even though all these actions were filed while Heck still worked
at DDKH, he denies ever working on, or having knowledge
concerning any of the matters prior to starting at Binder &
Binder.  (Heck Aff. at 11.)  In two of these cases, though, Heck
and Binder & Binder were both ultimately disqualified.
<u>Battagliola v. Nat'l Life of Vt.</u>, No. 03 Civ. 8558, 2005 WL
101353 (S.D.N.Y. Jan. 19, 2005) <u>later modified</u> No. 03 Civ. 8558
(S.D.N.Y. Jan. 26, 2005) (Peck, Mag. J.) (reversing original
opinion after the court learned that Heck had taken part in the
drafting of a motion for summary judgment); <u>Lott v. Morgan</u>
<u>Stanley Dean Witter & Co. LTD Plan</u>, No. 03 Civ. 9235, 2004 WL
2980193 (S.D.N.Y. Dec. 23, 2004) (Bear, J.).  In the third case,
after initially disqualifying Binder & Binder on an unopposed
motion, the district court in <u>Denisi</u> reconsidered and vacated
that order, holding that any disqualification motion was better
decided after the parties completed a claims reassessment
process.  <u>Denisi v. CNF Transp. LTD Plan</u>, No. 04 Civ. 2379

(D.N.J. March 24, 2005) (Kugler, J.).[1]

Binder & Binder contends that Heck had no knowledge of or substantive involvement in any other cases the firm has against Unum, including the present matter.[2]   When the firm first hired Heck, Harry Binder specifically admonished him that he was not to discuss his prior representations with anyone in the firm. (Binder Aff. at 2.)  The firm claims that at the end of September 2004, after one of Heck's former partners raised the disqualification issue in Denisi, it began screening Heck from all Unum matters, other than those listed above.  (DeHaan Aff. at 3.)  To screen Heck, Binder & Binder significantly restricted his access to the physical and computer files concerning all matters involving his former clients.  Id.  The firm also instructed its members to not discuss any of these matters with Heck.  (Binder Aff. at 5.)

Due to the disqualification motions his continued employment was causing, on January 13, 2005 Heck tendered Binder & Binder a

---

[1] In addition to these three Unum matters, while at Binder & Binder Heck also represented another party adverse to a different former client, Continental Casualty Company ("Continental").  In Edwards v. Gould Paper Corp. Long Term Disability Plan, 352 F. Supp. 2d 376 (E.D.N.Y. 2005) (Wexler, J.), Continental was the administrator of the Gould Paper long-term disability plan. Before Heck left Binder & Binder, Judge Wexler disqualified both Heck and Binder & Binder.  Id.

[2] The only involvement Binder & Binder claims Heck had in Unum matters, other than those listed above, concerned the firm's defense against disqualification motions stemming from Heck's hiring.  (Pl. Mem. of Law in Opp'n at 6.)

thirty-day notice of resignation.  (Binder Aff. at 6.)  On

January 20, 2005 the firm informed Heck that he would continue to

receive his salary through the end of the thirty-day period, but

that he was not to return to the Binder & Binder offices.  Id.


## Discussion

## (1)

## Disqualification Principles

Disqualifying a party's counsel is a "drastic measure" that

requires the balancing of two important considerations.  A.V. by

Versace, Inc. v. Gianni Versace, S.p.A., 160 F. Supp. 2d 657,

662-63 (S.D.N.Y. 2001).  On the one side is the deference the

system gives a party in selecting counsel of their choice, and on

the other side is the need for the profession to maintain the

highest degree of fiduciary and professional standards.

Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d

127, 132 (2d Cir. 2005) (Leval, J.); Evans v. Artek Sys. Corp.,

715 F.2d 788, 791 (2d Cir. 1983) (Mansfield, J.).

Disqualification of an attorney imposes a substantial transaction

cost on a party.  The affected party incurs the costs associated

with finding a new attorney who must then become familiar with

the matter.  Gov't of India v. Cook Indus., 569 F.2d 737, 739 (2d

Cir. 1978); Siemens Energy & Automation, Inc. v. Coleman Elec.

Supply Co., Inc., No. 98 Civ. 3416, 1999 WL 551223 at *4

(E.D.N.Y. June 23, 1999) (Trager, J.).  In addition, the party

also loses the benefit of a chosen counsel's expertise in a field

and specialized knowledge of the party's affairs.  Gov't of

India, 569 F.2d at 739.

In preserving professional standards the district court is

not strictly interested in policing the ethics rules.  Universal

City Studios v. Reimerdes, 98 F. Supp. 2d 449, 455 (S.D.N.Y.

2000) (Kaplan, J.); see also Hempstead Video, Inc., 409 F.3d at

132 ("[N]ot every violation of a disciplinary rule will

necessarily lead to disqualification."); Board of Educ. of the

City of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)

(Feinberg, J.) ("[W]e have shown considerable reluctance to

disqualify attorneys despite misgivings about the attorney's

conduct.").  That is a job better left to specialized

professional disciplinary bodies, including the Grievance

Committee of this Court.  Nyquist, 590 F.2d at 1246; Etna Prods.

Co. Inc. v. Tactica Int'l, 234 F. Supp. 2d 442, 445 (S.D.N.Y.

2002) (Kaplan, J.).  Rather, "[t]he objective of the

disqualification rule is to 'preserve the integrity of the

adversary process,'" Evans, 715 F.2d at 791 (quoting Nyquist, 590

F.2d at 1246).  As a result, disqualification is only appropriate

where allowing the representation to continue would pose "a

significant risk of trial taint."  Glueck v. Jonathan Logan,

Inc., 653 F.2d 746, 748 (2d Cir. 1981) (Newman, J.).  A court

should disqualify an attorney for a conflict of interest only where the conflict raises a significant risk that the attorney will be unable to represent his client with zeal and vigor or where the attorney possesses privileged information, obtained through prior representation of an adverse party, that might benefit his or her current client.  Id.; Commercial Union Ins. Co. v. Macro Int'l Corp., 75 F. Supp. 2d 108, 110 (S.D.N.Y. 1999) (Kaplan, J.).

These considerations have led the Second Circuit to disfavor disqualification and to require the party seeking disqualification to satisfy a "high standard of proof" in order to succeed.  Evans, 715 F.2d at 791 (quoting Gov't of India, 569 F.2d at 739).  "Mere speculation will not suffice."  Paretti v. Cavalier Label Co., Inc., 722 F. Supp. 985, 987 (S.D.N.Y. 1989). This is especially important because motions to disqualify are "often interposed for tactical reasons," and in the best of situations "inevitably cause delay."  Nyquist, 590 F.2d at 1246.

Lastly, disqualification motions are left to the discretion of the district court.  Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975); Human Elecs. v. Emerson Radio Corp., 375 F. Supp. 2d 102, 105 (S.D.N.Y. 2004) (DiBianco, Mag. J.).  This discretion, though, should be exercised with Chief Judge Kaufman's oft-quoted admonition in mind:

> When dealing with ethical principles, . . .
> we cannot paint with broad strokes.  The

> lines are fine and must be so marked.
> Guideposts can be established when virgin
> ground is being explored, and the conclusion
> in a particular case can be reached only
> after a painstaking analysis of the facts and
> precise application of precedent.

Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225, 227

(2d Cir. 1977) (Kaufman, C.J.) (quoting his earlier opinion in

United States v. Standard Oil Co., 136 F. Supp. 345, 367

(S.D.N.Y. 1955)).

**(2)**

**The Parties' Arguments**

In the present matter, Reilly concedes that Heck, if he were

still with the firm, would have to be disqualified from

representing her due to his prior representation of Unum.  (Pl.

Mem. of Law in Opp'n at 13.)  Because Heck is not still with the

firm, the issue is whether Heck's disqualification should be

imputed to the rest of the Binder & Binder firm.  Papyrus Tech.

Corp. v. New York Stock Exchange, Inc., 325 F. Supp. 2d 270, 278

(S.D.N.Y. 2004) (discussing the imputation of disqualification

from an attorney to his firm).

Defendants claim that during his representation of them Heck

had access to important information regarding Unum's claims

processing and legal strategies.  They claim that when he went to

Binder & Binder he imparted this information to the rest of the

firm.  Defendants attempt to put forth several arguments

purportedly showing how Heck has already or could in the future

9

prejudice defendants' case.  Defendants claim that Heck's

departure from the firm is irrelevant because by the time he left

the damage had already been done.

Plaintiff's counsel responds to these allegations by

emphatically stating that Heck never imparted any confidential

information to others attorneys in the firm.  Plaintiff's counsel

claims that the screen the firm erected prevented Heck from ever

working on the present matter, from ever discussing this matter

with Binder & Binder attorneys, and from ever even seeing the

firm's files concerning this matter.  Plaintiff's counsel argues

that the restrictions it placed on Heck were strengthened by the

fact that Heck worked out of the firm's Wane, New Jersey office

and was separated from the physical files and the rest of the LTD

Department "by 70 miles, state lines, two (2) rivers and [New

York City's] legendarily bad traffic."  (DeHaan Aff. at 3.)  In

support of their argument plaintiff's counsel submitted six

affidavits from Binder & Binder attorneys, including all the

attorneys working on this matter, averring that the affiants

never spoke with Heck concerning Reilly's case and that Heck

never divulged privileged information to them concerning Unum.

(DeHaan Aff.; Delott Aff.; Binder Aff.; Kassman Aff.; Busse Aff.;

Montas Aff.)  Finally, plaintiff also argues that the

disqualification of Binder & Binder would constitute a

substantial hardship to her because the firm has represented her

since 2002 and is completely familiar with her case.

In reply defendants dismiss Binder & Binder's defense that they screened Heck. Initially, they argue that the Second Circuit has not recognized screening as a general defense to imputed disqualification. They next contend that even if the Second Circuit has recognized screening generally, in a small firm screening is not an effective remedy. Then they claim that if screening is an effective defense, plaintiff has not presented sufficient evidence to substantiate her claim that the firm screened Heck. Lastly, defendants argue that the screen was imposed too late to be of any real value.

**(3)**

**Analysis**

When an attorney associated with a firm is disqualified from representing a party due to a prior representation a presumption is created that the full firm was privy to the disqualified attorney's privileged information and that the full firm's continued representation would taint the trial process. Papyrus Tech. Corp., 325 F. Supp. 2d at 278 (citing N.Y.C.R.R. tit. 22, ch. IV, § 1200.24 (DR 5-105(D))). However, this presumption is rebuttable through a showing that privileged information was not passed to other members of the firm. Id.; U.S. Football League v. Nat'l Football League, 605 F. Supp. 1448, 1466 (S.D.N.Y. 1985). Contrary to defendants' arguments, the Second Circuit has

expressly accepted the proposition that "in appropriate cases and on convincing facts, isolation — whether it results from the intentional construction of a 'Chinese Wall,' or from de facto separation that effectively protects against any sharing of confidential information — [can] adequately protect against taint." Hempstead Video, Inc., 409 F.3d at 138.

Heck has already left Binder & Binder. Therefore, there is no concern over whether a screen would be effective going forward. Cf. Decora Inc. v. DW Wallcovering, Inc., 899 F. Supp. 132, 140 (S.D.N.Y. 1995) (Koeltl, J.) (holding in part that the full firm had to be disqualified because there was too great a continuing risk that confidential information could be passed). The only remaining concern then is: did Binder & Binder sufficiently screen Heck such that Heck could not provide the rest of his firm with privileged information that would taint this action? Plaintiff's counsel states that unlike in Battagliola and Lott, Heck was completely screened from this matter and had no contact with this case. Defendants argue that in a small firm an effective screen would be impossible.

In Mitchell v. Metropolitan Life Insurance Co. Inc., No. 01 Civ. 2112, 2002 WL 441194 (S.D.N.Y. March 21, 2002) (Pauley, J.), Judge Pauley held that in the 12-lawyer New York office of Lieff Cabraser the erection of a screen would be ineffective. Id. at *10. In such a small office the lawyers interact regularly and

this interaction would present an unacceptable risk of at least inadvertent transfer of improper information.  Id.  Judge Pauley based this evaluation, at least in part, on a similar determination made by the Second Circuit in Cheng v. GAF Corp., 631 F.2d 1052 (2d Cir. 1980) (Meskill, J.) (holding that in a small law firm office the continuing risk of inadvertent disclosure was too great to allow the firm to continue its representation), judgment vacated on other grounds, 450 U.S. 903 (1981).  Mitchell, 2002 WL 441194 at *10 (citing  Cheng, 631 F.2d at 1058).  Defendants claim that since Binder & Binder is also a small firm that the same logic should apply in this case.  However, Mitchell and Cheng are not on all fours with the present matter.  In those cases most or all the attorneys were located in the same physical office as the disqualified attorney.  By contrast, in the present situation Heck was located in a different office from all the attorneys in his department and most of the attorneys in the firm.  Additionally, all the files concerning this matter were kept at the firm's Ronkonkoma office, and Heck never had access to them.  This physical separation is an important distinction because it substantially reduces the chances of inadvertent disclosure and strengthens the physical aspects of the screen.[3]  See Battagliola, 2005 WL 101353 at *46

---

[3] In addition, the Cheng decision was later vacated by the Supreme Court on grounds that disqualification motions should not be heard as interlocutory appeals.  The Second Circuit has

13

(stating that Heck could easily have been screened from the case since he worked in a different office than the attorneys handling the Battagliola matter); cf. Crudele v. New York City Police Dep't, Nos. 97 Civ. 6687, 97 Civ. 7366, 97 Civ. 9515, 97 Civ. 9516, 2001 WL 1033539 (S.D.N.Y. Sept. 7, 2001) (rejecting the use of a screen under similar conditions because the disqualified attorney was in the same office as attorney assigned to the case).  Therefore, it is possible that Binder & Binder could screen Heck from this matter.

        As proof that they did screen Heck, plaintiff's counsel has presented two affidavits describing the procedures the firm here put in place.  (DeHaan Aff. at 3; Binder Aff. at 5.)  Initially, Heck was told to never discuss with Binder & Binder attorneys matters relating to former clients.  When the screen was erected, Heck's computer access was restricted, his ability to view case files was controlled, and other attorneys in the firm were reminded to never discuss Unum related matters with him.

        In addition to these affidavits describing the screen, plaintiff's counsel has presented affidavits that unequivocally state that Heck did not provide the affiants with any confidential information concerning Unum.  Because Heck did not bring any confidential Unum-related documents or files with him

recently stated that, even though several district courts have relied upon Cheng, the opinion is not binding precedent. Hempstead Video, Inc., 409 F.3d at 138 n.5.

from DDKH, there is no chance that other Binder & Binder attorneys could have seen any confidential information. The only way that confidences could have been disclosed was through statements by Heck. As a result, these affidavits provide strong circumstantial support for the claim that Heck was isolated from others in the firm. Papyrus Tech., 325 F. Supp. 2d at 279 (stating that affidavits submitted by the attorneys working on the matter, averring that the disqualified attorney never revealed confidential information to them, "weigh[ed] against" imputing disqualification to the rest of the firm); Del-Val Fin. Corp. Secs. Litig., 158 F.R.D. 270, 275 (S.D.N.Y. 1994) (holding that affidavits stating that the disqualified attorney had not disclosed confidential information were important where oral statements were the only way to disseminate confidential information).

These affidavits also satisfy any concerns that Heck passed along confidential information during the period of less than one month between the time he was hired and the time that the screen was implemented. When the firm first hired Heck, he was told not to discuss his prior representations. The affidavits show that Heck adhered to this practice. Heck's physical separation from the rest of the department also means that even before formal screening procedures were implemented, there was a clear physical distance separating Heck and the files and attorneys working on

this matter.  Human Elecs., 375 F. Supp. 2d at 113 (denying a
motion to impute disqualification to a firm where the screen may
not have been erected until a month after the disqualified
attorneys joined the firm); Del-Val, 158 F.R.D. at 275
(dismissing concerns that confidences could have been passed
during a two-month window between when the disqualified attorney
joined the firm and when screening mechanisms were implemented).

Under the facts of this case it is difficult to see how this
action will be tainted by Heck's brief association with Binder &
Binder.  Heck was not at DDHK when this action was filed, and
DDHK never represented Unum in this matter.  Cf. Edwards, 352 F.
Supp. 2d at 378 (disqualifying Heck and Binder & Binder in part
because DDHK had represented defendants while Heck was still at
partner there).  To show the supposed damage that has already
been done, defendants argue that Binder & Binder's request in the
Lott case for depositions concerning Unum's roundtable
discussions was a new request that came about only as a result of
Heck's involvement in the case.  However, as plaintiff's counsel
demonstrates, this is not true.  Prior to Heck's joining Binder &
Binder, the firm had put forth numerous interrogatory questions
and discovery demands concerning the roundtable discussions, (Pl.
Ex. B, C, D) and the firm had, on several occasions during
depositions, asked questions regarding roundtable meetings. (Pl.
Ex. E, F, G.)

16

Defendants also argue that Binder & Binder should be
disqualified because the complaint in this action not only
attacks the injuries suffered by Reilly, but also attacks Unum's
claims-handling procedures.  They argue that Heck may have
imparted confidential information to other Binder & Binder
attorneys concerning claims procedures and thereby given
plaintiff an unfair advantage.  First, as has been shown, Heck
did not impart such information in this case.  Second,
defendants' argument ignores the fact that numerous courts have
already examined and criticized Unum's claims policies.  Radford
Trust v. First Unum Life Ins. Co. of Am., 321 F. Supp. 2d 226,
247 n.20 (D. Mass. 2004) (listing numerous cases where Unum
policies and practices have been criticized and reversed),
abrogated on other grounds by Orndorf v. Paul Revere Life Ins.
Co., 404 F.3d 510, 517 n.8 (1st Cir. 2005).  Many of these cases
examined Unum's claims procedures in detail and, as a result,
much of the information that Heck could have brought with him has
already been made public.  (See Pl. Ex. U, Decl. of former Unum
claims handler Linda Nee) (describing numerous illegal aspects of
Unum's claims-handling practices).  Third, due to a settlement
agreement between Unum and the United States Department of Labor
and various states' insurance regulators, Unum has agreed to
change its claims-handling procedures and agreed to re-assess
plaintiff's claim.  (Dkt. No. 14: Letter from John W. DeHaan to

17

Judge David G. Trager (Feb. 10, 2005); Pl. Ex. X.)  Thus, it is

unlikely that any general claims-handling information that Heck

could have imparted to other lawyers in Binder & Binder would be

of any use to them going forward.  As a result, there is no risk

such information could unfairly benefit plaintiff, and there is

no risk that it could taint the trial process.  See Frontline

Commc'ns Int'l v. Sprint Commc'ns Co. L.P., 232 F. Supp. 2d 281,

288 (S.D.N.Y. 2002) (Cedarbaum, J.) (rejecting an argument that

absent a showing of prejudice the firm should still be

disqualified for prior questionable behavior).

        Finally, when this lack of a meaningful showing that the

trial process here will be tainted in any way is weighed against

the hardship disqualification would place on plaintiff, it is

clear that defendants' motion should be denied.  Plaintiff here

is not a large corporate client with a litigation budget; rather

she is an unemployed individual attempting to recover long-term

disability insurance payments.  Binder & Binder has represented

her in this matter since she was first denied benefits in 2002,

some two years before Heck's arrival on the scene.  In connection

with her injury the firm has argued successfully on her behalf

before the New York State Worker's Compensation Board and the

Social Security Administration, again long before Heck began

working at Binder & Binder.  (DeHaan Aff. at 18.)  The firm

clearly has a long history with this matter and a detailed

understanding of the facts underlying it.  To disqualify Binder &

Binder would require Reilly to find a new attorney who would need

to become familiar with the case.  The lost time and money

associated with this transition is of particular importance here,

where Reilly is unemployed and defendants have provided only a

speculative argument that Heck betrayed their rights in this

matter.  See In re Bohack Corp., 607 F.2d 258, 263 (2d Cir. 1979)

(Mulligan, J.) (stating in the bankruptcy context that "[t]he

delay and additional expense created by substitution of counsel

is a factor to which we have attached considerable significance

in these cases.").  Indeed, the motion here smacks of a tactical

strategy rather than a bona fide concern with a client's

confidences.  See Etna Prods. Co. Inc., 234 F. Supp. 2d at 445

(denying motion to disqualify in part because the court perceive

the motion to be tactically motivated); Universal City Studios,

98 F. Supp. 2d at 455 (same).  Nevertheless, this decision does

not pass judgment on whether Heck or Binder & Binder violated any

ethical rules; it merely holds that their actions will not taint

the trial process in this case.  In any case, defendants have not

met the high burden of proof imposed by the Second Circuit for a

successful disqualification motions.

## Conclusion

For the foregoing reasons, defendants' motion to disqualify

Heck is moot, and defendants' motion to disqualify Binder &

Binder is denied.


Dated:  Brooklyn, New York
        March 30, 2006


                                   SO ORDERED:


                                   _____/s/_____
                                   David G. Trager
                                   United States District Judge